Good morning, Your Honors. May it please the Court, Matt DeRay for the Plaintiff Appellant. I do want to get to the merits of this case and the issues that were raised in the briefing, but before I do, I know the Court is concerned with the abstention doctrine, so I'd like to address that first. I think first and foremost, the point that I really want to emphasize here is that despite the use of the term tax rebate, the rebates at issue in this case really don't have much to do with taxes or rebates in the traditional sense that we've seen in the case law where the abstention doctrine applies. Talking about an error of the clerk who was preparing the documents, which produced the problem of giving them more money than they were entitled to. Well, in this case, what the issue is, is that the city... The basis of what you're complaining about is a tax, is it not? The basis of what we're complaining about is a gratuitous benefit that was conferred by the city after the taxes were levied, collected, remitted, and became part of... But the predicate and the underlying thing is a tax base. Well, that would be true of any government benefit. Well, not necessarily. The government derives its revenue from taxes, at least in... And fines, and forfeitures. There are certain categories, but a large majority of government expenditures... Oh, I'll accept that. This was paying my salaries. I'm not complaining bitterly about it. Well, in this case, the taxes levied by Cook County, there is some... When they apportion the money out to the various taxing bodies that are involved, the clerk of the county court allocates that. The treasurer sends the money out. And if there's a mistake made in the first instance, the check is either too large or too small. That's correct, but here... But it's a tax. That would be true if it had anything to do with the county level and the treasurer and the overpayment. What happened was, is that in 2010, it's a 2010 tax year. Those taxes were paid in 2011. In 2012, after the taxes had been collected by the collector, taken by the treasurer, remitted to the municipality... An error? No, not an error. At the time that they were remitted to the municipality, that was the municipality's money to do what they wanted with it. It wasn't until after the municipality received the money from the treasurer that they said, you know what, we're going to pay it forward. The municipality received the money in error is what I'm suggesting. Oh, so that has to do with the Pappas case that was in Cook County Court. And a point that I want to make there is that that money... There was some money that was received in error, but that has nothing to do with the taxation. Did the city have to repay the money to the county? The city did have to repay some money to the county, but that had nothing to do with the rebates that the city issued in this case. Why not? Because the city... Wasn't it the same money? The city had been doing this rebate program for 11 consecutive years without any sort of overpayment. They decided to do it a 12th year when they had their budget. They made this budget and they decided, we're going to do it again. If you take a look at the rebate form, it does say on the top of that form, the city is proud to announce that we're going to be doing it for the 12th year in a row. So the city raising this argument that, well, we got this money in error from Cook County and we had to pay it back. That's the only reason for these rebates. That's not true. They had been doing this for 11 consecutive years. So this isn't a case where the city got a windfall and said, where'd this money come from? Let's pay it forward to our citizens. This is a case where the city routinely, year after year after year, had money that had come from... When they had gotten it from the normal tax levy, had decided to reapportion it to their residents. The difference is, and this is where this case really... This is the crux of this case. When the city had this overpayment from the county, they decided, you know what? We're not going to try to find a way to pay this back. We're just going to take the rebate money that we've been giving out for 11 consecutive years, and we're not going to pay it the 12th year. We're going to take it from our residents and we're going to give it to Cook County. And that is precisely what the Fifth Amendment and the Bill of Rights... Could we circle back, though, to the abstention issue? Yes. You seem to be saying to us that this has nothing to do with taxes. The ordinance says the city wants to minimize a homeowner's property tax burden, and so we're going to provide for a property tax rebate to property taxpayers who own dwellings within the city. Why is that not covered by the CAPRA and FAIR assessment abstention doctrine? So in CAPRA and FAIR assessment, those have to do with challenging the amount of the assessment or challenging the actual taxes that were paid. In this case, like I said, this ordinance was not passed until April 2012. The tax assessment was made in 2010, paid in 2011. So this isn't a situation where the city said, we are going to reduce our tax lien or we are going to change the assessment in some manner, and the citizens had some ability to say, oh, no, this tax assessment was incorrect. In this case, what happened is that the city said after it had already collected the taxes, already after everything, after all the accounting had been done, it just decided to give a gratuitous benefit back that was just tied in some way. They just used the property tax amount as sort of a marking point for how much each resident would get. Twenty-five percent rebate. Well, let me try again. Can you point us to any language in CAPRA or FAIR assessment or other cases applying the 1983 tax abstention doctrine that supports the distinction that you're trying to draw so that this is not about taxes? Yes. So in CAPRA, that case was about the tax review board's determination of what the assessment should be. So in that case, the court said, we're going to abstain because states should be allowed to. Let me try again, Mr. Duray. Can you point me to language in those decisions that supports the distinction you're asking us to draw? I understand there are some factual differences, but I understood the comity doctrine in those decisions to be fairly broad so that the federal courts don't use 1983 to order state and local governments, particularly local governments, rather, to provide tax refunds or rebates at the request of taxpayers. So in CAPRA, one of the things that the court points to as to why the exception to the abstention doctrine does not apply is because there were options with the county board of review and the property tax appeal board that the taxpayer, the plaintiff in that case, could have used. What I'm saying is that in this case, I understand it's a factual issue, but had the residents here gone to the review board and... Well, that review may not be available. Why not just go to state court? Because even in state court, there was no issue with the amount that was assessed. The assessment... No one's disputing what the assessment was, and no one's disputing that the amount they paid was some sort of overpayment. They paid exactly what they owed. There's no issue there. The issue is that after that was collected and later down the line, after the money had changed hands, that then the city did not do something that they promised to do. So if they would have went to state court on a tax basis where the... Or on the constitutional basis. Well, that's... If you want me to get into the issue of the state court remedies, I'm happy to, but I'm... I think that's central to the abstention doctrine. Well... The exception is if those remedies are not plain, adequate, and complete. I haven't heard anything indicating yet that there are not plain, adequate, and complete remedies in state courts for the claims that you're making. The plain, adequate, and complete remedies that they talk about in those cases, specifically because they talk about the ability to go to the Board of Review and the Property Tax Review Board, those pertain to what the challenge is on the assessment. Once you get to a... I understand that the abstention doctrine applies to tax disputes couched in 1983. But what I'm saying is that that's not the case here. What the issue is is that there is no tax dispute here. No one's disputing anything that was paid. And so the normal issues of the state court remedies, which because this is a Monell claim, it's immediately cognizable in federal court, that line of cases would apply and not this line of cases here with the abstention doctrine. But I'm going to stop now and reserve my time for my rebuttal. Thank you. Mr. Reddick. Thank you. May it please the court, Mike Reddick on behalf of the city of Country Club Hills. The main reason we're here today is because Ms. Bell wants the federal court to find that the city is required to pay tax rebates that the city, through its council, has already decided are not in the financial interest of the city to pay. She claims that the failure to pay out on these tax rebates under the now repealed tax rebate ordinance violated her constitutional rights. And we argued, and Judge Zagel agreed with us, that this claim does not affect any vested rights that would, there was no vested right in the tax rebate that she claimed she had a vested right to and that she had state court remedies available to her that she never pursued. That brings us to the comedy and abstention doctrine issues that the court directed us to, appropriately so because they are very applicable in this case. This is clearly a taxation issue. Plaintiffs or appellant is clearly asking us, asking the court, to make a finding that would direct how the city can control its tax income, its tax rebates, its ability to tax its citizens. It's one of the most fundamental rights of the local government as to how to tax its citizens. And the fair assessment, the CAPRA, the Hyde cases, they did all address tax assessment issues, but they went on to state that the federal court should keep its hand out of any sort of issues involving taxes as far as municipalities and state government goes. That's clearly what we have in this case. Plaintiff clearly has state remedies available to her. As was discussed and conceded, she could have brought any of these claims in state court. The CAPRA case, the Hyde case, and the fair assessment, or the CAPRA case and the Hyde case, all affirm that Illinois courts meet the definition of a plain, speedy, and efficient remedy. That argument was presented to Judge Zagel? I'm sorry? That argument was presented to Judge Zagel, wasn't it? It was the comedy argument you're asking, Judge? Not directly. We did not cite to fair assessment CAPRA and Hyde. We raised the issue that she did have state court remedies available to her in our motion to dismiss. We also raised that issue in our briefs before Your Honors. The CAPRA case, or I believe it's the CAPRA case, also says that the court can raise the comedy and abstention doctrine on its own accord, which it did in this case. So I think the issue is appropriately before Your Honors today. And as I said, this is unquestionably an action that attempts to limit the city's ability to tax as it sees fit. Any order requiring the city to pay the tax rebates would directly interfere with the city's ability to tax and control its finances. One of the primary issues that's kind of been skirted around here is if the court directed the city to pay on these tax rebates, it's going to have to compensate for that money somehow, and that would be through further taxation, which is the general way that municipality raises income. So there's a potential for an increase in taxes or a cut in the city's essential services, all sorts of things that would negatively impact the residents. If there's any question as to whether or not the city can offer a tax rebate to its citizens, that's best left to the city. It was ultimately determined that that tax rebate ordinance was not in the best interest of the city, and it was repealed through two separate ordinances as we addressed in the brief. So on the abstention issue, what if they hadn't called it a property tax rebate of 25% and didn't limit it to property tax owners and just said every man, woman, and child in the city is going to get a check for X dollars this year? That may be a different issue, but in this case, I mean, they did refer to it. The tax issue is intimately entwined in the ordinance language, the rebate application language. In that case, that may be outside of the abstention doctrine because it may not directly affect the taxation ability. But I still think an argument could be made under the Fair Assessment Hyde and Kaffir cases that it is a request from the federal courts to step in and control how the city controls its finances. Well, we'd enforce, for example, a contract that the city made to pay somebody who is administering a program to provide, I don't know, recreation or lunches or whatever, right? And the case law that we've cited in our briefs shows that, you know, contractual issues are somewhat different than this issue, which is, as Appellants Council referred to repeatedly, this was a gratuitous benefit offered by the city. They weren't compelled to offer this benefit. Nothing required them to offer this benefit. No one contested the assessment of taxes for the years that were affected here. This was a gratuitous offer by the city, and they were certainly in their realm to repeal that offer. As we noted in the briefs, which we got into the vested rights issues exclusively, but I feel if the court finds a common abstention applies here, we're not even going to get to the vested rights issue because that would dispose of the matter in federal court. But as far as the vested rights issues, I did want to touch upon those in our brief. Because this was a gratuitous offer by the city, this does not amount to something that could be considered a vested right and something that a plaintiff could claim deprived her of some constitutional right here. This was something that was enacted through legislation in the tax rebate ordinance. It was repealed through a repeal ordinance, appropriately so, and it was never anything that she had title to, that she owned. This was a gratuitous benefit that she had an expectancy in and did not ever amount to a vested right that would bring it under the Constitution. And as I discussed, having the courts interfere with the city's ability to control its tax money and its financial issues would significantly harm the city. If the court required them to pay on this tax rebate that they determined was not in their best financial interest, it would have a significantly detrimental impact on both the city and its citizens. And as far as the state court remedy that we discussed, there's nothing to suggest that the Illinois courts don't offer a plain, adequate, and complete state remedy pursuant to the Fair Assessment, CAPRA, and Hyde cases. And I wanted to point out that we focused our brief, and this kind of ties into the abstention issues as well, the Board of Regents v. Roth case said that rights are defined by state law. And we focused our brief on the Lindheimer case, which was very on point with the facts of this case. In Lindheimer, the issue was a tax refund issue, and that case was based on an overpayment of taxes. The court found that there was no vested rights in tax refunds, and that is the law that should be applied in this case. Again, this was a discretionary act by the city. Nothing compelled them to have to offer these rebates, and they were certainly free to repeal it as they saw fit. I will say that, you know, until Plaintiff had the check in her hand from the tax refund, she did not have any sort of rights or title to this tax rebate, and at no point did she have a constitutionally protected right to the tax rebate. You know, I would request that this court affirm Judge Zegel's ruling on her motion to dismiss, and pending any further questions, that's the extent of my argument. Thank you. You have five minutes. Thank you. So if your honors would like, I could continue to delve into the abstention issue, but I would like to touch on the merits of the case just briefly. I do think that the briefs speak for themselves. I think that it's very clear that a lot of the law that's cited by the city is not really applicable here. The big distinction that I would like to point out that we took great lengths to try to explain in the briefing was this difference between vested rights versus expectation rights versus contingent rights that are outlined in the Pearsall case. Here, we're not dealing with a situation where there's some sort of nebulous, this may happen in the future, you're entitled to the continuation of a particular statute. Here, the mandatory language of the statute fixed these residents' rights to their rebates. They had the ability, they submitted their claims, everything, all the predicates, all the conditions precedent had been completed at the time that they submitted these things and they were entitled factually because of their circumstances to the rebates under the ordinance at that time. Mr. DeRay, the label vested or non-vested frankly seems to me a lot more like a conclusion than a helpful analytic tool. You talked in your brief about the Landgraf case with respect to retrospective or retroactive legislation. As we look at those Landgraf factors, is there any argument here that the plaintiff had some reliance on this ordinance? There's a couple issues there that I'd like to address. The first one is, as far as the cases that deal with how a right vests and how a right comes to be fixed, and I think that's what we're getting at, a fixed right. The Chemrex case, which is from Illinois, the National Wildlife case and the Abreu case among others, there's no reliance element that ever comes into play in those cases. Some of the cases there is some reliance, but in other cases there's not. Even in a case, the Siegelinsky case, which they did find that future benefits to a pension, those rights weren't vested. They did mention that the contributions that were already made to the fund were vested, even though they were unquestionably a gift. So I don't think that there is any reliance element here. I was trying to follow up on your brief, your argument about retroactive legislation. Does reliance that the Supreme Court talked about in Landgraf simply not play a role here? Reliance does not, I don't think in Landgraf or the cases cited in the brief, that reliance necessarily means some sort of detrimental reliance that it may in some sort of contract law or some other thing. I think reliance is that a person has a right to something that they can rely on what the government says. At a certain point... Where do you get that? Well, because all the cases that have to deal with vested rights and with whether a right is fixed at a point of time have to deal with the fact that at a certain point the rights are fixed. And so reliance in that context is that a person can rely on the fact that their rights have been fixed. They can rely on that particular right and receiving that benefit. The other issue on reliance is that there is some detriment here. Even if the city wants to argue that these people, if this ordinance would have never been passed, there wouldn't have been a difference because they wouldn't have received anything anyways. Here, the law makes clear that these rebates became their property. And so the fact that the city did not do anything and did not pay out the money is a detriment to the citizens. It's a complete taking of their property. And so that is also a detriment here. And the citizens did rely on that benefit coming through. My time is up. I thank the court for its time. And I ask that the court remand this case so that we can continue prosecuting this action for the citizens. Thank you. Thank you, counsel. Thanks to both counsel.